## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CONSOLIDATED BEDDING, INC., *et al.*,[1] | Case No. 09-11875 (BLS) |
| Debtors. | |
| Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Consolidated Bedding, Inc., *et al.*, | Adv. Proc. No. 19-50727 (BLS) |
| | **Re: Adv. Docket Nos. 1, 4, 5, 21, 22, 23, 24, 25, 26** |
| Plaintiff, | |
| v. | |
| L&P Financial Services Co., | |
| Defendant. | |

### OPINION[2]

Before the Court are cross-motions in this Adversary Proceeding filed by Alfred T.

Giuliano, Chapter 7 Trustee in these cases (hereinafter, the "Trustee" or "Plaintiff") and L&P

Financial Services Co. (hereinafter, "L&P" or "Defendant"). For the reasons set forth below,

---

[1] The Debtors are the following entities: Consolidated Bedding, Inc.; Ackerman Manufacturing Company; Alabama Bedding Manufacturing Company, Inc.; American Bedding Industries, Inc.; Associated Trucking Company, Inc.; Atlas Bedding Manufacturing Corporation; Chattam & Wells, Inc.; Nature's Rest, Inc.; Nature's Rest Marketing, LLC; Spring Air Bedding Company; Spring Air California - Deluxe Bedding Company, Inc.; Spring Air Mattress Company; Spring Air Mattress Company of Colorado; Spring Air - Mountain West, Inc.; Spring Air Partners - California, Inc.; Spring Air Partners - New Jersey, Inc.; Spring Air Partners - North America, Inc.; Spring Air Partners - Texas, Inc.; Spring Air West, LLC; and The Spring Air Company.

[2] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedures. *See* Fed. R. Bankr. P. 7052, 9014(c).

summary judgment will be entered in favor of the Trustee, and L&P's cross-motion will be denied.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O).

## BACKGROUND

Consolidated Bedding and its related companies (collectively, the "Debtors") manufactured and sold mattresses under the trade name and trademark Spring Air and related names pursuant to certain licenses and agreements. On May 29, 2009 (the "Petition Date"), Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code. As noted, Mr. Giuliano was appointed as the Chapter 7 trustee for the purpose of administering the Debtors' estates.

At the time of the filing, Debtors had two primary debt obligations. Debtors owed approximately $231 million on a senior secured basis to American Capital Financial Services, Inc. (hereinafter, "American"). L&P, the junior secured creditor, was owed approximately $14.4 million. The claims of American and L&P were secured, respectively, by senior and junior liens on substantially all of the Debtors' assets. Prior to the Petition Date, L&P and American entered into the Intercreditor and Subordination Agreement (the "Intercreditor Agreement") for the dual purposes of (1) subordinating L&P's liens upon the Debtors' assets to those of American and (2) preserving L&P's position in the collateral as a junior secured creditor/ lienholder behind American [Adv. Docket No. 5].

On June 4, 2009, a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines was sent to all creditors and parties in interest, including Leggett & Platt.[3] L&P timely filed a proof of claim in the amount of $14,400,994.01 ("Claim 110"). L&P alleges $11,448,889.10 of that amount is the secured claim (the "L&P Junior Secured Claim") owed to it by the Debtors.[4]

During the course of the bankruptcy, American and the Trustee entered into certain arrangements because the Trustee did not have any money with which to administer the case. The record reflects that the Chapter 7 estate held certain potentially valuable causes of action, and the Trustee and American entered into negotiations to develop a framework for pursuing those causes of action and sharing any recoveries or proceeds resulting therefrom. The negotiations resulted in the Sharing Stipulation[5] and Antitrust Agreement Stipulation,[6] both of which are described in detail below. L&P alleges that it was not aware of these negotiations and stipulations.

**Sharing Stipulation**

In order to enable the Trustee to monetize and liquidate the collateral, the Trustee and American reached an agreement to compensate the Trustee and the estates for the costs

---

[3] Leggett & Platt, Inc. is the parent company of L&P.

[4] The L&P Junior Secured Claim is evidenced by, among other things, a Second Amended Restated Senior Subordinated Secured Promissory Note dated June 25, 2007 (the "Subordinated Secured Promissory Note") [Adv. Docket No. 21].

[5] On December 3, 2010, the Court entered the *Order Approving Stipulation and Agreement Regarding Distribution of Certain Proceeds of Collateral Between the Chapter 7 Trustee and American Capital Ltd., as Agent for Certain Purchasers* ("Approval Order"), approving the Sharing Stipulation [Docket No. 289].

[6] On March 1, 2012, the Court entered the *Order Approving Stipulation and Agreement of Settlement Between and Among the Chapter 7 Trustee. Spring Air International LLC, and American Capital, Ltd.* ("Antitrust Agreement Order"), approving the Antitrust Agreement Stipulation [Docket No. 436].

associated with the collection, realization upon and liquidation of the collateral. The Sharing

Stipulation provides, in relevant part, as follows:

> The Trustee shall pay seventy-five percent (75%) of all proceeds of ACAS
> [American] Collateral to ACAS, immediately upon receipt by the Trustee of such
> proceeds. Such payment shall be made pursuant to instructions to be delivered by
> ACAS to the Trustee. The remaining twenty-five percent (25%) of the proceeds of
> ACAS Collateral shall be retained by the Trustee, as his sole and exclusive
> compensation for the costs incurred by the Trustee, the Debtors or their estates in
> connection with the ACAS Collateral, including the liquidation, realization upon
> and collection of the ACAS Collateral (the "Trustee's Compensation").

*See* Sharing Stipulation, ¶ 2.

In a nutshell, by way of the Sharing Stipulation, the parties agreed that the first three-

fourths of any proceeds (net of expenses) would go to American. After that, the Trustee would

keep the remaining 25% of the proceeds.

**Antitrust Agreement Stipulation**

The record also reflects that in order to resolve a dispute between the Trustee, Spring Air

International, LLC ("Spring Air") and American concerning the ownership of certain antitrust

claims, these parties negotiated and reached a similar agreement regarding how those claims

would be pursued.[7] Pursuant to the Antitrust Agreement Stipulation, the parties agreed that the

antitrust claims were property of the Debtors' estates, that the proceeds of such claims should be

first used to pay all fees and expenses of contingency counsel in connection with the prosecution

of such claims, and, thereafter, the Trustee would pay American 75% of such proceeds and retain

25%, consistent with the Sharing Stipulation. *See* Antitrust Agreement Stipulation, ¶¶ 2-3. This

Stipulation also replaced the term "Trustee's Compensation" used in the Sharing Stipulation with

---

[7] *See* main case Docket No. 426.

the term "Estate Retained Share." *See* Complaint, ¶ 35; *see also* Antitrust Agreement Stipulation, ¶ 4.

Over the course of a decade, the Trustee prosecuted a number of claims and ultimately settled them, bringing in over $11 million to the estate.[8] After paying American its portion in accordance with terms of the Stipulations, the Trustee is currently left with approximately $2.3 million. The present dispute arises because L&P claims that it is entitled to all of these funds on account of its rights as a junior secured creditor.

On October 25, 2019, the Trustee filed the adversary complaint to enforce the pre-petition Intercreditor Agreement pursuant to section 510(a) of the Bankruptcy Code and to subordinate L&P's junior secured debt. The Trustee also asks the Court to determine the extent and validity of L&P's alleged lien upon the property of Debtors' consolidated estates, and specifically to find that L&P does not hold an enforceable lien on any proceeds held by the Trustee.

## DISCUSSION

### The Parties' Positions

By his Motion, the Trustee seeks declaratory relief because he contends that the "Estate Retained Share" negotiated between the Trustee and American is a "carve-out," free and clear of any lien, claim, or interest asserted by L&P [Adv. Docket No. 21]. Next, the Trustee asserts that the L&P junior secured claim component must be subordinated pursuant to the Intercreditor Agreement and Bankruptcy Code § 510(a). Finally, the Trustee asserts that L&P's Junior Secured Claim should be disallowed pursuant to § 502(b)(1) of the Code because "Claim 110 is

---

[8] While the amounts of the settlements are confidential and filed under seal, an analysis and calculation of various applications to approve settlements and antitrust counsel fees have revealed that the Trustee collected approximately $11.4 million from the antitrust claims. *See* Main Case Docket Nos. 471, 487, 500, 507, 512, 527, 558, 572, and 577.

unenforceable against the Debtors, as the Trustee is prohibited from paying it under the Intercreditor Agreement and L&P is prohibited from accepting any payments on accounts of its [j]unior [d]ebt under the Intercreditor Agreement." *See* Complaint, ¶¶ 48-49.

L&P takes the position that it has a valid and enforceable lien on Debtors' assets, which cannot be reduced or eliminated through this adversary proceeding. L&P asserts that the Trustee was aware of its existence as a junior secured creditor prior to the negotiations and execution of the Stipulations, and yet failed to provide L&P with any notice. L&P contends therefore that it is not bound by the Stipulations and its rights were not affected thereby. Finally, L&P asserts that American has waived its senior liens on the proceeds, so that its junior liens attach to the funds held by the Trustee which are derived from L&P's collateral.

## Legal Standard

Federal Rule of Civil Procedure 56(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The movant bears the burden of establishing the absence of a genuine issue of material fact. *Id.* at 322-23. If the movant is successful, the burden then shifts to the respondent to establish that summary judgment is not warranted. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The opposing party must produce specific facts that establish the existence of a

genuine dispute. *Id.* at 587. It is not sufficient to defeat a motion for summary judgment for the respondent to merely allege a factual dispute. *Anderson*, 477 U.S. at 247-48.

Further, the Court must view all facts and draw all inferences in favor of the respondent. *Id.* at 261 n.2; *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). A motion for summary judgment may only be denied "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587 (citation omitted). Therefore, the Third Circuit Court of Appeals has held that "in all cases summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Petruzzi's IGA Supermarkets v. Darling-Del. Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

### Analysis

The Court first turns to the issue of whether the "Estate Retained Share" of the collateral proceeds represents an unencumbered carve-out. The Trustee contends that the proceeds received by way of the Sharing Stipulation and Antitrust Agreement Stipulation are carve-outs from American's collateral. L&P takes the position that the Trustee's Compensation cannot be a carve-out because the term "carve-out" is absent from the Sharing Stipulation and Antitrust Agreement Stipulation.

"As generally used, a carve out is an agreement between a secured lender, on the one hand, and the trustee or debtor in possession, on the other, providing that a portion of the secured creditor's collateral may be used to pay administrative expenses." Richard B. Levin, *Almost All You Ever Wanted to Know About Carve Out*, 76 Am. Bankr. L.J. 445 (2002); *see In re White*

7

*Glove, Inc.*, No. 98-12493, 1998 WL 731611, at *6 (Bankr. E.D. Pa. Oct. 14, 1998). "[A] secured creditor may agree to allow a trustee to recover the costs of prosecuting a bankruptcy estate's claim from the proceeds of the litigation when that claim is subject to the creditor's lien." *Id.* at 448 (*citing In re BII, Inc. Security Serv., Inc.*, 133 F.3d 205, 209 (2d. Cir. 1998)). Absent "a carve-out from prepetition secured liens, a secured creditor with a blanket lien over all the debtors' assets can prevent professionals who assisted in the bankruptcy from being paid . . ." *In re Licking River Mining, LLC*, 911 F. 3d 806, 812 (6th Cir. 2018). In sum, "a secured creditor may consent to the use of its collateral as it chooses." Levin at 448.

Here, the Trustee negotiated and reached an agreement with American to keep 25% of the proceeds recovered as part of discharging his duties as the Chapter 7 Trustee and more specifically, for his efforts in liquidating American's collateral. To date, the Trustee has litigated a number of claims and reached settlements amounting to approximately $11.4 million, an amount which is nowhere near satisfying the over $230 million senior secured debt owed to American. American enjoyed the right to carve funds out from the proceeds of its collateral to incentivize the Trustee to pursue claims on behalf of the Debtors' estate, and that is precisely what happened here.

The relationship between American and L&P is governed by the Intercreditor Agreement. It is undisputed by the parties that the Intercreditor Agreement is a "subordination agreement" within the meaning of § 510(a) of the Code. *In re Gen. Wireless Operations Inc.*, No. 17-10506, 2017 WL 5462990, *19 (Bankr. D. Del. Apr. 11, 2017). "Section 510(a) of the Bankruptcy Code provides that [a] 'subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable non-bankruptcy law.'" *In re La*

*Paloma Generating Co.*, 595 B.R. 466, 470 (Bankr. D. Del. 2018), *aff'd sub nom. In re La*

*Paloma Generating Co. LLC*, 609 B.R. 80 (D. Del. 2019).

The Intercreditor Agreement provides American with broad authority to release liens in

any collateral in connection with a sale or disposition of the collateral and simultaneously

curtails L&P's rights to oppose or interfere with those actions. The Intercreditor Agreement

provides, in relevant part, as follows:

> 2.6     Sale and Release of Collateral. Notwithstanding anything to the contrary
> contained in any of the Agreements, only Senior Creditor shall have the right to
> restrict or permit, or approve or disapprove, the sale, transfer, or other disposition
> of Collateral, provided that the proceeds of the disposition of such Collateral are
> applied to the repayment of Senior Debt as provided in the Senior Creditor
> Agreements. **In connection with any such disposition of Collateral as set forth
> in the first sentence of this Section 2.6, Junior Creditor shall (i) be deemed to
> have automatically and without further action released and terminated any
> Liens it may have on the Collateral (as and to the extent that Senior Creditor
> shall release and terminate its Liens)** to the extent such Collateral is sold or
> otherwise disposed of by Senior Creditor, any agent of Senior Creditor, or by any
> Debtor with the consent of Senior Creditor or is subject to a sale or other disposition
> pursuant to Section 363 of the Bankruptcy Law so long as such Section 363 sale
> has the consent of the Senior Creditor …

*See* Intercreditor Agreement § 2.6 (emphasis added).

Even if L&P could receive any of the proceeds, the Intercreditor Agreement provides that

the Junior Creditor would have to "hold the [proceeds] in trust, as trustee, for the benefit of the of

Senior Creditor, . . . and shall forthwith deliver the same to Senior Creditor . . . for application to

any of the Senior Debt in accordance with the terms of the Senior Loan Agreement." *See*

Intercreditor Agreement § 3.4. Put simply, L&P is unable to collect any proceeds until American

is paid in full.

Finally, L&P alleges that the Trustee failed to provide it with adequate notice of the

arrangements with American, as well as failing to properly serve L&P with the motions seeking

approval of the stipulations memorializing those deals. L&P argues that in failing to provide

adequate notice and proper service, the Trustee violated L&P's due process rights under the Bankruptcy Code and the Intercreditor Agreement.

While L&P's claim of lack of notice is troubling to the Court, there was no legal harm done to the Defendant. The Intercreditor Agreement fully authorized American to dispose of collateral however it chose, and prohibited L&P from objecting. L&P had thus entered into a contractual relationship (which the Court notes is common in the marketplace) that precluded it from interfering in any way with the decision-making process of American. While it may technically have been deprived of the opportunity to object by a failure of service, the fact is that L&P had already voluntarily waived any right to interpose an objection.

Further, L&P waived its right to object to any failure to provide notice. The Intercreditor Agreement provides specifically:

> Junior Creditor also waives notice of, and hereby consents to, (i) any amendment, modification, supplement, extension, renewal, or restatement of any of the Senior Debt or the Senior Creditor Agreements, including, without limitation, extensions of time of payment of or increase or decrease in the amount of any of the Senior Debt, the interest rate, fees, other charges, or any collateral, (ii) the taking, exchange, surrender and releasing of Collateral or guarantees now or at any time held by or available to Senior Creditor for the Senior Debt, (iii) the exercise of, or refraining from the exercise of any rights against any Debtor or any other obligor or any Collateral, (iv) the settlement, compromise or release of, or the waiver of any default with respect to, any of the Senior Debt, (v) Senior Creditor's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code or any applicable similar provision of any other Bankruptcy Law and/or (vi) claims arising out of any cash collateral or financing arrangement or out of any grant of a security interest in connection with the Collateral in any Insolvency or Liquidation Proceeding.

*See* Intercreditor Agreement § 4.3.

As noted, L&P seeks an order from the Court instructing the Trustee to pay L&P the remaining 25% of the proceeds retained by the Trustee. However, as noted above, L&P cannot receive payments until American's senior debt has been paid in full. The total proceeds

recovered by the Trustee in the last decade amounts to approximately $11.4 million, and that is not enough to give L&P any real stake in these proceeds. Accordingly, the Court will deny L&P's cross-motion and enter judgment in favor of the Trustee for the reasons stated above.

## CONCLUSION

For the reasons stated above, the Court finds and concludes that L&P's motion for summary judgment is DENIED and the Trustee's cross-motion is GRANTED. The Court requests that the parties confer and submit a form of order consistent with this ruling within ten (10) days of the date hereof.

BY THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated: June 25, 2021
         Wilmington, Delaware